IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ERIC HOSEY-BEY, #193 503, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CIVIL ACT. NO.: 2:13-CV-838-WKW |
| | ) | [WO] |
| WARDEN CHRISTOPHER GORDY, | ) | |
| *et al.*, | ) | |
| | ) | |
|     Defendants. | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, a state inmate incarcerated at the Ventress Correctional Facility, in Clayton, Alabama, files this 42 U.S.C. § 1983 complaint alleging acts of retaliation because of his litigation activities. Named as defendants are Warden Christopher Gordy, Althea Townson, and Lieutenant Lewis Hulett. Plaintiff requests damages and declaratory and injunctive relief. Doc. 1.

Defendants filed an answer, special report, and supporting evidentiary materials addressing Plaintiff's claims for relief. Docs. 19, 20. Upon receipt of Defendants' special report, the court issued an order directing Plaintiff to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Plaintiff "the court may at any time thereafter and without notice to the parties (1) treat the special report and any supporting evidentiary materials as a

motion for summary judgment." Doc. 21 at 2. Plaintiff responded to Defendants' report, *see* Doc. 24, but his response does not demonstrate there is any genuine issue of material fact. The court will treat Defendants' report as a motion for summary judgment, and concludes this motion is due to be resolved in favor of Defendants.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material

fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non- moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient

evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION[1]

## A. First Amendment Retaliation Claim against Defendants Townson and Hulett

Plaintiff, who states he holds the title of Grand Sheik of the Moorish Science Temple of America ["MSTA"] group at Ventress, complains Defendants cancelled several MSTA religious services in retaliation for a lawsuit he filed in 2012 against Defendant Townson.[2] According to the complaint, Defendant Hulett, as shift commander, is responsible for securing a guard in the chapel when religious groups conduct services. MSTA meets for Sunday school on Sundays at 5:30 p.m. and also

---

[1] To the extent Plaintiff raises additional allegations of constitutional violations in his opposition which were not affirmatively pled in his complaint, he may not "amend" his complaint through his opposition by raising a new claim. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting a new basis for a pending claim raised during summary judgment proceedings). The court, therefore, addresses Plaintiff's retaliation and failure to investigate claims as alleged in the complaint, and considers the facts only to the extent that they support these two claims. *See Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not amended the complaint).

[2] Plaintiff identifies the previous lawsuit as Civil No. 2:12-CV-959-TMH. The court takes judicial notice of its own records which reflect Plaintiff filed a § 1983 complaint against Defendant Townson, formerly known as Althea Williams, on November 1, 2012. *See Hosey v. Williams,* Civil Action No. 2:12-CV-959-WHA (M.D. Ala. 2015). In that action, Plaintiff alleged Defendant Williams deprived him of his First Amendment right to practice his religion when she closed down the Sunday school service of the MSTA after only a brief period due to a shortage of officers necessary for security and discriminated against him when she allowed Christians to hold their religious service later that same evening. *See Id.*

conducts a service every first Wednesday of the month at 5:30 p.m. Service for Christians includes Sunday school on Sundays from 8:30 a.m. to 10:00 a.m. and a church service on Sundays from 2:30 p.m. to 4:00 p.m. Plaintiff contends each shift commander has no difficulty staffing the chapel with security during the Christian services. He alleges, however, that Defendants Hulett and Townson "refuse to give [MSTA] the same assistance [with staffing] that is given the two Christian services" on Sundays. Doc. 1 at 4. "[U]nder the same efforts of retaliation," Plaintiff states several MSTA Wednesday services experienced cancellations. *Id.* Plaintiff cites elven cancellations of MSTA's Sunday school service and four cancellations of MSTA's Wednesday night business meetings between March 10, 2013, and October 13, 2013. *Id.* at 5.

Plaintiff maintains that the actions taken by Defendants Hulett and Townson regarding the claims presented against them were motivated by their desire to retaliate against him for his filing a civil action against Defendant Townson in 2012. A claim that a plaintiff was penalized for exercising a constitutional right is properly considered under the First Amendment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999) (*en banc*). The First Amendment protects inmates from retaliation by prison officials for filing administrative grievances and lawsuits. *Wright v. Newsome*, 795 F.2d 964 (11th Cir. 1986); *Farrow v West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "The gist of a retaliation claim is that a prisoner is penalized

for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989); *Farrow*, 320 F.3d at 1248.  Conclusory allegations of retaliation, however, cannot demonstrate the existence of each element requisite to establishing retaliation. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1266 (11th Cir. 2009), *overruled on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012), (stating that "in testing the sufficiency of the plaintiff's allegations, we do not credit ... conclusory allegations as true").  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").

In ruling on an inmate's First Amendment retaliation claim, courts use a burden shifting analysis. *Moton v. Cowart*, 631 F.3d 1337, 1341–42 (11th Cir. 2011). Plaintiff must establish three elements: "(1) 'his speech or act was constitutionally protected'; (2) 'the defendant's retaliatory conduct adversely affected the protected speech'; and (3) 'there is a causal connection between the retaliatory actions and the adverse effect on speech.'" *Id*. at 1341 (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X*, 175 F.3d at 397.  Regarding the causation prong a court "asks whether the defendants were subjectively motivated" by Plaintiff's protected act.  *Smith*, 532 F.3d at 1278.  If Plaintiff shows that "his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Moton*, 631 F.3d

at 1341–42 (quoting *Smith*, 532 F.3d at 1278). Upon production of evidence demonstrating a legitimate reason for the conduct and/or actions in question, Plaintiff, with the ultimate burden of proof, must show there is a genuine dispute of material fact concerning Defendants' defense. *See Osterback v. Kemp*, 300 F.Supp.2d 1238, 1254 (N.D. Fla. 2003). Federal courts must "carefully scrutinize" retaliation claims brought by prisoners challenging adverse actions of correctional personnel, *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), and "approach prisoner claims of retaliation with skepticism and particular care. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official— even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Defendant Townson denies Plaintiff's allegations of retaliation and states she does not know of MSTA services being cancelled, she cancelled no MSTA religious services, meetings, or Sunday school classes, and no one approached her in this regard on the dates cited by Plaintiff. Of the fifteen dates Plaintiff claims the MSTA

had a service or meeting cancelled, Defendant Townson affirms she worked only six of those days and indicates she and Defendant Hulett never worked at the same time on the dates specified by Plaintiff. Finally, Defendant Townson states she did not discuss with Defendant Hulett Plaintiff's prior lawsuit nor any matters regarding the scheduling, cancelling, and/or relocation of services, classes, or meetings of the MSTA group. Doc. 20, Exh. 1.

Defendant Hulett denies any knowledge regarding cancellations of MSTA gatherings including Sunday school classes or meetings. He states he worked six dates Plaintiff claims MSTA Sunday school classes were cancelled and worked only one day on which Plaintiff indicated the Wednesday MSTA business meeting was cancelled. Defendant Hulett further explains he does not have authority to cancel unilaterally any religious service and has not done so regarding any classes, services, or meetings of the MSTA as described by Plaintiff nor has anyone approached him in this regard. Like Defendant Townson, Defendant Hulett states he never worked the same days and/or times she did regarding the dates specified by Plaintiff and denies discussing with her the scheduling, relocating, or cancelling of any MSTA classes, meetings, or services. Regarding Plaintiff's prior litigation against Defendant Towson, Defendant Hulett denies knowledge of that complaint prior to Plaintiff filing this lawsuit. Doc. 20, Exh. 2.

Defendant Hullet's response indicates that prior to September 22, 2013, he was unaware of complaints about religious classes, services, or meetings being relocated to a room in Dorm B. On that day, Defendant Hulett explains a staff shortage prevented him from posting a correctional officer in the Chapel during the MSTA's scheduled service. Consequently, prison staff directed the group to report to a room in Dorm B to hold their service. Some of the MSTA leaders later informed Defendant Hullet they could not hold their service in the Dorm B room because they needed flags and other items during their service. Defendant Hulett acknowledged the groups' concern but explained the room in Dorm B was the only option available at the time due to the shortage of officers available to be present in the Chapel. Doc. 20, Exh. 2.

Chaplain Daniel Rieben contacted Defendant Gordy regarding concerns by members of the MSTA group over having services held in a room in Dorm B on September 22, 2013. Warden Gordy contacted Defendant Hulett about the matter. Defendant Hulett explained that a staff shortage in security personnel required the MSTA service to be moved from the Chapel to the Ice Room in Dorm B on that occasion. Defendant Gordy states a significant shortage of security personnel exists at Ventress which occasionally results in the relocation or cancelling of inmate programs and services for more than just the MSTA group. Doc. 30, Exh. 4.

9

Although Plaintiff's prior lawsuit was constitutionally protected speech, the second element of a retaliation claim requires him to demonstrate that the challenged actions "would likely deter a [prisoner] of ordinary firmness" from voicing complaints or filing legal actions challenging the behavior of correctional officers. *Smith*, 532 F.3d at 1277. This "presents an objective standard and a factual inquiry." *Id*. There is nothing before the court that indicates the challenged actions would deter an ordinary inmate from voicing complaint and/or filing lawsuits, and there is no evidence Plaintiff was deterred in either of these pursuits. But assuming, *arguendo*, this standard has been met regarding the alleged cancellation of MSTA religious services and meetings, Plaintiff fails to satisfy the third requisite element of a retaliation claim - a causal connection between his constitutionally protected activities and the alleged adverse actions of Defendants. The causal connection inquiry focuses on the "subjective motivation of the defendants." *Thaddeus-X*, 175 F.3d at 399. The subjective motivation issue is resolved by most courts under the burden-shifting formula in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). This formula requires that Plaintiff first meet "his burden of establishing that his protected conduct was a motivating factor behind any harm" and then "the burden of production shifts to the defendant. If the defendant can show he would have taken the same action absent the protected activity, he is entitled to

prevail on summary judgment." *Thaddeus-X,* 175 F.3d at 399 (citing *Mt. Healthy*, 429 U.S. 274).

Defendants Townson and Hulett deny the allegations of retaliation made by Plaintiff. They deny they cancelled any MSTA services or meetings and disclaim any knowledge regarding the cancellation of Sunday school services or meetings relating to Plaintiff and/or the MSTA group regarding the time periods referenced. Their evidence reflects staffing shortages at Ventress occasionally required moving or cancelling prison programs and services and such occurrences did not affect the MSTA group alone. Plaintiff argues the mere fact he filed a prior lawsuit against Defendant Townson supports his retaliation claim as does the fact that other religious groups conducted services on the same day the MSTA group had their activity cancelled even though, as he notes, security staff was available when the other groups' services or programs were scheduled. Doc. 24. Plaintiff, however, produces no evidence, beyond his own conclusory allegations, that Defendants Townson's or Hulett's actions were causally related to his previous litigation against Defendant Townson. "A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision 'subject to exhaustive challenge,' solely because he was engaged in a First Amendment right." *Adams v. James*, 784 F.2d 1077, 1082 (11th Cir. 1986); *Adams v. James*, 797 F. Supp. 940, 949 (M.D. Fla. 1992)." *Cranford v. Hammock,* 2010 WL 916031 *8 (N.D. Fla. 2010).

To the extent some programs and services at Ventress were cancelled or moved to other locations, including those which effected the MSTA group, Defendants Townson and Hulett have shown a legitimate reason for such action. Plaintiff has not come forward with evidence to dispute that the changes and/or cancellations to the MSTA services and meetings were done out of retaliation rather than because of legitimate institutional security concerns. Plaintiff offers only his conclusory allegation of ultimate fact that Defendants Townson and Hulett retaliated against him for filing a lawsuit. This allegation is insufficient to defeat summary judgment. *Waddell v. Valley Forge Dental Associates, Inc*., 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.). The record before the court is devoid of admissible or potentially admissible evidence, direct or otherwise, from which a reasonable fact finder could infer the requisite motivating factor as to the alleged act of retaliation. Additionally, the circumstances, when taken as a whole, do not support making such an inference. Because Plaintiff's allegations against Defendants Townson and Hulett fail to support a First Amendment retaliation claim, they are entitled to summary judgment.

## B. Failure to Investigate Claim

Plaintiff claims he notified Defendant Gordy of the alleged retaliatory changes and cancellations of the MSTA religious services and meetings but maintains the

Warden failed to respond to his formal complaint. On March 19, 2013, Plaintiff asked Chaplain Danny Rieben to contact Defendant Gordy to arrange a meeting with Plaintiff to discuss his concerns over the "efforts of retaliation." Plaintiff complains Defendant Gordy declined to look into the matter by refusing to meet with him. Doc. 1.

"It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). "The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." D*eShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989). "The law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Banks v. Annucci*, 48 F.Supp.3d, 394, 414 (N.D. N.Y. 2014); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 342 (S.D. N.Y. 2003) (prisoners have no due process right to an investigation of grievances). Based on the foregoing, the court concludes that Defendant Gordy's failure to investigate and/or respond to Plaintiff's complaints of retaliation does not rise to the level of a constitutional violation and, therefore, provides him no basis for relief.

## C. First Amendment Retaliation Claim against Defendant Gordy

Plaintiff claims Defendant Gordy refused to allow the institutional chaplain to contact or meet with religious clergy (Brother Eric Hardy-El) on behalf of Plaintiff and/or the MSTA group and refused to allow this individual to sponsor the MSTA group at Ventress in retaliation for Plaintiff's prior lawsuit against Defendant Townson. Plaintiff further alleges Defendant Gordy denied his request asking the Warden to reconsider his decision because Brother Hardy-El had made contributions/donations to the MSTA group in the past and was willing to make additional donations. Doc. 1; *see also* Doc. 24, Exh. B.

Prior to learning that Mr. Hardy was not a legitimate sponsor for the MSTA group, Chaplain Rieben contacted Defendant Gordy, on Plaintiff's behalf, about Mr. Hardy entering Ventress as a MSTA sponsor.³ Defendant Gordy, with previous

---

³ According to Chaplain Rieben:

> Mr. Eric Hardy, he is not an "outside leader" of the Moorish Science Temple of America group as incorrectly stated by the inmate plaintiff Eric Hosey in his Complaint. According to the National Prison Representative for the Moorish Science Temple group, Mr. R. McDowell Bey, Mr. Hardy is not an approved sponsor for the Moorish Science Temple of America group and thus cannot act as a representative for Moorish Science Temple of America. Mr. R. McDowell Bey further confirmed for me that he had contacted the Moorish Science Temple of America's National Leadership and verified that Mr. Hardy is *not authorized* to come into any facility and/or to conduct any business in the name of the Moorish Science Temple of America.
>
> I would note that before learning Mr. Hardy was not a legitimate sponsor for the Moorish Science Temple group, I asked Warden Gordy, on the plaintiff, inmate Hosey's behalf, if Mr. Hardy could enter Ventress as their sponsor. Although Warden Gordy indicated that he was disinclined to allow Mr. Hardy to enter Ventress as a sponsor due to his past negative behavior experience with Mr. Hardy at Donaldson Correctional Facility, he, Warden Gordy was willing to

14

negative behavior experience with Mr. Hardy at the Donaldson Correctional Facility, was not inclined to allow Mr. Hardy to enter Ventress as a sponsor. Defendant Gordy, however, told Chaplain Rieben to inform Mr. Hardy to call him (Warden Gordy) to discuss the matter further. Mr. Hardy did not contact Defendant Gordy. Defendants' evidence further reflects that Mr. Hardy-El is not an approved sponsor for the MSTA and is not authorized to enter any facility and/or conduct business in the name of the MSTA. Doc. 20, Exhs. 3, 4.

As explained, Plaintiff's prior lawsuit is constitutionally protected speech. He has not shown, however, that Defendant Gordy committed an adverse retaliatory action caused by his protected speech. As explained, this second element requires Plaintiff to demonstrate that the challenged actions "would likely deter a [prisoner] of ordinary firmness" from exercising the right in question. *Smith*, 532 F.3d at 1277. Plaintiff claims Defendant Gordy would not allow the institutional chaplain to facilitate interactions between the MSTA group at Ventress with Mr. Hardy-El and denied Plaintiff's requests that he (Defendant Gordy) reconsider his decision denying the MSTA group the opportunity to contact Mr. Hardy via the facility

---

> discuss this matter further with Mr. Hardy and asked me tell Mr. Hardy to call Warden Gordy.
>
> To my knowledge Warden Gordy has not forbidden inmate Hosey from contacting Mr. Hardy as inmate Hosey has indicated. And as noted above, Mr. Hardy is not, as further indicated by inmate Hosey, a member of the religious clergy for the Moorish Science Temple of America group.

Doc. 20, Exh. 3.

chaplain. Nothing before the court indicates the challenged actions would deter an ordinary inmate from filing lawsuits. *See Smith*, 532 F.3d at 1276. Assuming, *arguendo*, this standard has been met, Plaintiff fails to satisfy the third element of a retaliation claim - a causal connection between his constitutionally protected activities and the alleged adverse actions of Defendant Gordy. *Thaddeus-X*, 175 F.3d at 399.

Beyond his conclusory allegation that filing his prior lawsuit supports his retaliation claim (*see* Doc. 24), Plaintiff has produced no evidence that Defendant Gordy's actions were causally related to his prior litigation. Defendant Gordy denies retaliating against Plaintiff for his litigation activities. He states he undertook no action preventing Mr. Hardy from making financial contributions to the MSTA Group. The Warden, however, was not inclined to let Mr. Hardy enter Ventress as a sponsor because his previous personal experience with this individual's behavior in the institutional setting was negative. Defendant Gordy denied Plaintiff's request for facilitation of the institutional chaplain by which the MSTA group could contact Mr. Hardy-El. Doc. 20, Exh. 4; Doc. 24, Exh. B. Nevertheless, the evidence reflects that Plaintiff could himself contact Mr. Hardy –El and that Defendant Gordy remained open to speaking with Mr. Hardy-El upon his initiative. Doc. 20, Exhs. 3, 4.

The record is devoid of admissible or potentially admissible evidence, direct or otherwise, from which a reasonable fact finder could infer the requisite motivating

factor element. Additionally, the circumstances, when taken as a whole, do not support making such an inference. Thus, Plaintiff's retaliation claims falter on this element. Defendant Gordy is, therefore, entitled to summary judgment on Plaintiff's retaliation claim. *See Harris v. Ostrout*, 65 F .3d 912, 916 (11th Cir. 1995) ("Appellant also produced nothing, beyond his own conclusory allegations, suggesting that [the prison official's] actions in compliance with the [prison] regulations were motivated by a retaliatory animus. In the absence of such evidence, summary judgment was appropriate.").

### III.  CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment (Doc. 20)  be GRANTED;

2.  Judgment be ENTERED in favor of Defendants;

3.  This case be DISMISSED; and

4.  Costs be taxed against Plaintiff.

It is further

ORDERED that **on or before March 8, 2017**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.

Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file a written objection to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the parties to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done this 22nd day of February, 2016

       /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE